The judgment of the court (Rost, J. being absent,) was pronounced by
Preston, J.
By an act of the Legislature approved the 12th of March, 1838, the State agreed to loan to the Mexican Gulf Railway Company her bonds for $100,000, upon the terms expressed in the act. Shortly afterwards the bonds were issued and delivered to the company, which in pursuance of the law, by a notarial act, granted the State the first lien, privilege and mortgage upon the present and future property of the company.
The road commencing in the parish of Orleans was, at the time of the loan and act of mortgage and privilege, extending through the parish of St. Bernard; the company also acquired property in that parish, and yet the State failed to record the act of mortgage and lien in the parish of St. Bernard.
The company having failed to pay the interest on the bonds loaned to them, as bound by the law and their contract, the Legislature directed the seizure and sale of their property and rights. On the petition of the Aftorney General of the State, writs of seizure and sale were issued to the sheriffs of the parishes of Orleans and St. Bernard, and on the 19th of October, 1842, the former seized all the property and rights of the defendants in the parish, including the railway as far as constructed. The sale of part of the property having been arrested by an injunction, the attorney general stayed the sale of the whole, but did not waive his seizure.
The sheriff of the parish of St. Bernard seized and sold a saw-mill erected on the margin of Lake Borgne, and the State became the purchaser.
The injunction suit was decided and settled the rights of the parties then in court, as will be seen in 3 R. R. 513.
The Legislature, then, by an act approved the 25th of March, 1844, directed the whole of the property and rights of the company to be sold in mass for not less than fifteen thousand dollars, and upon the condition that the purchaser should keep the road in operation upon the terms and conditions originally *334 imposed upon the company by its charter; the price payable on a credit of 6, 12, 18 and 24 months.
The aM;ol'riey general applied for and obtained an order of sale in pursuance of law, and on the 30th day of November, 1844, the sheriff, by virtue of the order, sold the whole of the property and rights of the company in mass, for $15,050, on the terms prescribed.
A few days previous to the sale, Franpis Léon-, R. J. Lucros and Gustave Lucros filed oppositions to the proceedings for the sale by the State; the first two claiming the payment of judgments with the preference of judicial mortgages resulting from the record of their judgments in the parish of St. Bernard in November, 1842. The last claimed a privilege upon a portion of the road in that parish, for having furnished a large quantity of timber for its construction.
The judgments were recorded in the parish, after the seizure on behalf of the State, but before the passage of the act of 1343 extending a seizure in one parish to an entire property if it lies in two or more parishes. Previously to the passage of this act, the sheriff could only seize the part of the property situated in his parish. C. P. 643. These judgment creditors must, therefore, be preferred to the State, because property subject to their judicial mortgages in St. Bernard was not seized, and, indeed, it does not appear to have belonged to the company at the date of the mortgage given to the State.
The district judge was undoubtedly right in concluding that Gustave Lucros could not claim a preference over the State for the price of the timber furnished for the construction of the road, since the claim amounted to more than five hundred dollars, and had not been recorded as required by law to preserve a privilege. C. C. 3239. But a careful consideration of the act approved the 16th of March, 1848, leaves no doubt that the Legislature intended to afford him an equitable relief. By the third section it is enacted, that the liquidator “ shall have authority, for the purpose of distributing the assets of the Mexican Gulf Railway Company, to enter with the creditors of the same into such compromises as may effect a speedy liquidation of their respective claims: provided it be with the sanction of the court, saving and reserving to such parties as might be aggrieved the right of appeal.” This section of the act was passed in consequence of the memorial of Lucros setting forth his complaints and claiming relief. And the district court erred in supposing that the Legislature did not intend to allow relief out of the assets then in the hands of the sheriff. The company was entirely insolvent, and had no assets whatever but the proceeds of the property which the State had caused to be sold. These proceeds were still in the hands of the sheriff. For more than three years Lucros had been contending with the State for a share in them. The State, by causing the sale of the properly in mass, and imposing upon the purchaser the onerous condition that he should fulfil the terms and conditions of the original charter of the company, had pr-obably caused the creditor injury for which-he was entitled to indemnity. His claim was undoubtedly equitable, and he contended, although we .think erroneously, that he had a legal preference over the State. The act of 1848, therefore, authorised the liquidator to compromise with him under the sanction of the court.
The liquidator did so, and relinquished to him about half the proceeds of the sale in the hands of the sheriff, and subjecting the half retained by the State to the payment of the other creditors, and all costs.
We think such a compromise too inequitable to be sanctioned by the court. The claim of the State was for $100,000 ; that of Lucros for $16,297. In *335 making an equitable arrangement, it is also to be considered, that this claim which he holds being in litigation, he purchased it at a sheriff’s sale for $300. He contends, lucrum captando; the State, damnum, vitando.
The judgments of Francois Léon and R. J. Lucros, and all costs, should be paid out of the assets in the sheriff’s hands, and the balance should be divided between the State and Gustave Lucros, in proportion to their claims.
The judgment of the district courtis reversed, and the case remanded for further proceedings according to law and conformably to the opinion of this court. And it is further ordered, that if the parties cannot compromise under the act of 1848, they must stand upon their legal rights.